J-S49034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAYMOND GASTON POWELL, III, | |
| Appellant | No. 208 EDA 2016 |

Appeal from the PCRA Order January 5, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0007621-2009

BEFORE: PANELLA, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED JUNE 13, 2016**

Appellant Raymond Gaston Powell, III, appeals the order entered in the Court of Common Pleas of Montgomery County on January 5, 2016, dismissing his first, counseled petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Upon our review of the record, we affirm.

In our disposition of Appellant's direct appeal, we related the following factual and procedural history of Appellant's case:

> Beginning in October 2007, investigators from the Plymouth Township Police Department and the Montgomery County District Attorney's Office conducted an investigation involving a drug ring operating in and around Plymouth Township and Norristown Borough, Montgomery County. Along with [Appellant], the principal subjects of this investigation were Charles Barksdale and Dontay Brewer. The investigation focused

---

[1] 42 Pa.C.S.A. §§ 9541-46.

*Former Justice specially assigned to the Superior Court.

on two primary locations: 44 Ross Street, Plymouth Meeting and 807 Green Street, 2nd Floor, Norristown.

On September 17, 2009, Montgomery County District Attorney's Office Detective Michael Fedak submitted an application for a search warrant along with an extensive affidavit of probable cause. The affidavit detailed the investigation dating back to its inception in late 2007. Based upon the averments contained therein, which included information obtained through the cooperation of six confidential informants, the Honorable Joseph A. Smyth issued a warrant authorizing investigators to search, *inter alia*, the aforementioned residence located on Ross Street in Plymouth Meeting. Upon execution of the warrant, officers discovered numerous firearms, ammunition, drug paraphernalia including plastic bags, a scale, cooking pots with cocaine residue, cutting agents, and instructions for preparing powder and crack cocaine. Investigators also retrieved several items linking [Appellant] to the residence, including photographs of him, a driver's license, registrations for two automobiles and letters.

Having been detained at the scene prior to the commencement of the search, [Appellant] was subsequently arrested after the police discovered the contraband. A search warrant was obtained for [Appellant's] Cadillac, in which police found additional contraband. [Appellant] was ultimately charged with numerous offenses related to the drug-trafficking ring. Others were charged in the conspiracy, but all except [Appellant] entered into guilty plea agreements, some of which involved testifying for the prosecution against [Appellant].

[Appellant] was tried by a jury and, on September 23, 2010, was convicted of possession with intent to deliver a controlled substance, unlawful possession of firearms and related charges. On December 7, 2010, Judge Smyth sentenced [Appellant] to an aggregate term of 16 to 40 years' incarceration.

*Commonwealth v. Powell*, No. 110 EDA 2011, unpublished memorandum at 1-3 (Pa.Super. filed March 28, 2013).

On direct appeal, Appellant first alleged Judge Smyth should have recused himself from the suppression proceedings, and Appellant attacked

the validity of the search warrant the court had issued. Appellant further challenged Judge Smyth's denial of his motion to disclose the identities of the confidential informants and claimed he was entitled to a new trial in light of after-discovered evidence in the form of a recantation of one of the Commonwealth's witnesses. Finding no merit to these claims, this Court affirmed Appellant's judgment of sentence. Our Supreme Court denied Appellant's petition for allowance of appeal on October 29, 2013. **See Commonwealth v. Powell**, 621 Pa. 702, 78 A.3d 1090 (2013).

On June 20, 2014, Appellant filed a PCRA petition, *pro se*. Counsel was appointed and filed an amended petition wherein he raised various claims of trial counsel's ineffectiveness. The PCRA court held a hearing on Appellant's petition on April 14, 2015, at which time Appellant, his sister and trial counsel testified. Following the hearing, the PCRA court took the matter under advisement to review the issues Appellant had raised in his PCRA petition in light of the hearing testimony, the parties' briefs, and the record as a whole. In its Memorandum and Final Order Dismissing Post-Conviction Petition dated December 31, 2015, and entered on January 5, 2016, the PCRA court denied Appellant's petition ("Memorandum"). Appellant filed a timely notice of appeal on January 15, 2016. The trial Court did not order, and Appellant did not file, a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925.

In his brief, Appellant presents the following question for our review:

Did Trial Counsel render ineffective assistance of counsel when he failed to raise a motion *in limine*, or take other appropriate steps, to redact portions of an intercepted telephone conversation, involving the Appellant, which clearly revealed that the Appellant was incarcerated?

Brief for Appellant at 3.

"In PCRA proceedings, an appellate court's scope of review is limited by the PCRA's parameters; since most PCRA appeals involve mixed questions of fact and law, the standard of review is whether the PCRA court's findings are supported by the record and free of legal error." **Commonwealth v. Pitts**, 603 Pa. 1, 7, 981 A.2d 875, 878 (2009) (citation omitted). Our Supreme Court has further stated that before a PCRA petitioner will be deemed entitled to relief on an ineffectiveness claim, he or she must establish:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. **Commonwealth v. Chmiel**, 612 Pa. 333, 30 A.3d 1111, 1127 (2011) (employing ineffective assistance of counsel test from **Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973, 975–76 (1987)). Counsel is presumed to have rendered effective assistance. **Commonwealth v. Ali**, 608 Pa. 71, 10 A.3d 282, 291 (2010). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. **Commonwealth v. Jones**, 590 Pa. 202, 912 A.2d 268, 278 (2006). Finally, because a PCRA petitioner must establish all the **Pierce** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis. **Ali,** at 291.

- 4 -

***Commonwealth v. Treiber***, ___ Pa. ____, ____, 121 A.3d 435, 445 (2015) (footnote omitted).

Herein, during the course of trial, the Commonwealth played a tape recording of a conversation between Appellant and his co-conspirator sister, Erica Powell, and displayed a transcript of the conversation as an aid to the jury, which included a reference that a co-conspirator Asmar Gary was "in here with me."[2] The call was recorded shortly after Appellant had been arrested and incarcerated awaiting trial in the instant matter, and his arrest was the topic of the conversation between Ms. Powell and Appellant. Defense counsel did not timely object to the playing of the conversation. Instead, after the jury had been excused for a recess, defense counsel placed an objection on the record, and the following discussion ensued in chambers:

> THE COURT: Okay. Do you want to put something on the record?
>
> TRIAL COUNSEL: Yes, Judge. I know the tape, for the record, has already been played. But there was [sic] references, I think in there that I believe the jury clearly could have figured out that the call was from prison.
>
> THE COURT: Well, the tape was provided to you in advance. I wish-- and the transcripts-- and I wish--
>
> TRIAL COUNSEL: Well, that's not true, Judge. I don't mean to cut Your Honor off. I didn't get a transcript ever. The

---

[2] Only the tape, not the transcript thereof, was admitted into evidence.

first time I looked at the transcript was just now right before the District Attorney played it.

As far as the tape is concerned, I did get the CD on Monday night, a day and a half ago.

DISTRICT ATTORNEY: Judge, he has had the CD since June or July.

TRIAL COUNSEL: The redacted CD.

DISTRICT ATTORNEY: Right. And the only thing I redacted was the part where they talk about Montgomery County Correctional facility. And when the operator comes on, I said to him, let me know if you have any objections when I gave it to him on Monday.

As far as the transcript is concerned, I believe that, when we were ready to go to trial in July, a transcript was prepared then.

THE COURT: Was it given to him?

DISTRICT ATTORNEY: I don't know. It is an aid to the jury--

THE COURT: Yes. But it would have been nice if he made this objection beforehand and called it to my attention, and I could have looked at the transcription. Nobody made the objection to me in advance.

The only objection I considered, off the record, was the fact that the two talkers' pictures were on the disc. And I ruled that those pictures should not be shown.

And you made an objection that said, this is a pay call. And you thought the fact that it was a pay call, there was an inference that the call was coming from the prison.

And I said I didn't think that to be so. I said that call—this is a pay call from [Appellant]. Do you accept?

And I believe something to that effect. And I said that doesn't mean prison. I mean, my God, that's the way I always used to call my kids.

We didn't put that on the record. At no time did anybody call my attention, I think there might have been one or two references about in here. Obviously, I would delete those in

> advance. I can't delete them now. The tapes have been played and the transcripts have been shown.
>
> DISTRICT ATTORNEY: The tape is the evidence. I mean, the tape is the evidence in the case.
>
> TRIAL COURT: The tape is the evidence.
>
> DISTRICT ATTORNEY: In June or July. And the redacted portion is –
>
> THE COURT: There was some statement he made that, he better have the money. If he don't have the money he is in here with me. Something to that effect. Now, that can mean a lot of different things.
>
> DISTRICT ATTORNEY: Exactly.
>
> THE COURT: If I would have heard it in advance, you know, there's a good chance I might have deleted it. Nobody called this to my attention in advance. There's nothing I can do about it now. I don't want to give a cautionary instruction. It would just [sic] their attention to it.
>
> DEFENSE COUNSEL: Understood.
>
> THE COURT: The objection is noted. Okay. Nothing else I could say.

N.T., Trial, 9/22/10, at 233-237.

Appellant avers that the "unmistakable, plain language of the telephone conversation (of which the jury was provided a written transcript) made it clear that [Appellant] was incarcerated at that specific point in time." As such, Appellant maintains trial counsel had been ineffective in failing to file a motion in limine, or otherwise act appropriately, to ensure the jury would not hear the "inadmissible" portions of the recordings. Brief for Appellant at 7-8.

As permitted under **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052 (1984), we analyze the prejudice prong of the **Pierce** test first. **See also Trieber**, ___ Pa. at _____, 121 A.3d at 448. In doing so we find that even assuming, as Appellant urges, that there is arguable merit to Appellant's claim the jury understood his words to mean he had been incarcerated at the time of the phone call and that trial counsel had no reasonable basis for failing to challenge this evidence in a timely fashion, Appellant is not entitled to relief for his failure to demonstrate the outcome of trial would have been different had his statement been redacted from the telephone conversation.

As the PCRA court noted in its Memorandum, if the jury were able to infer from Appellant's ambiguous statement that "[h]e in here with me" meant Appellant was incarcerated, it would have done so in the context of Appellant's being in prison awaiting trial for the charges pending in this case. Memorandum, filed 12/31/15, at 29. However, Appellant erroneously posits he was prejudiced by **any** reference to his incarceration, for our Supreme Court has stated that "although generally no reference may be made at trial in a criminal case to a defendant's arrest or incarceration for a previous crime, there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged." **Commonwealth v. Johnson**, 576 Pa. 23, 52-53, 838 A.2d 663, 680-81 (2003) (citing **Commonwealth v. Williams**, 541 Pa. 85, 94, 660 A.2d

1316, 1321 (1995); *see also*, *Commonwealth v. Wilson*, 538 Pa. 485, 506-07, 649 A.2d 435, 445-46 (1994) (finding testimony indicating defendant had been incarcerated before trial was not improper where jury reasonably could infer defendant's detention was result of criminal acts for which he was then being tried); *Commonwealth v. King*, 959 A.2d 405, 419 (Pa.Super. 2008) (relying upon *Johnson, supra* for a holding in the alternative that the appellant had not been harmed by an inferential reference of incarceration related to the matter for which he was on trial).

In addition, given the overwhelming direct and circumstantial evidence of Appellant's guilt, it is difficult to believe the outcome of the proceedings would have been different but for counsel's failure to challenge Appellant's brief statement in the recorded phone call. *See Commonwealth v. Philistin*, 617 Pa. 358, 53 A.3d 1, 10 (2012) (stating trial counsel presumed effective, and appellant must overcome such presumption by proving prejudice, meaning that there is a reasonable likelihood the outcome would have been different but for counsel's alleged ineffectiveness). Appellant's DNA was discovered on the recovered firearms and significant contraband was recovered from both his home and vehicle. Furthermore, testimony of his co-conspirators implicated him in the crimes. In this regard, the PCRA court stated:

> [T]he [c]ourt is convinced, in the context of the other evidence in the case, that any error in allowing the references to be heard by the jury would have been harmless beyond a reasonable doubt. The evidence connecting [Appellant] with the crack

cocaine operation, and with possession, at the very least joint if not sole possession, of the drugs, paraphernalia, and firearms found in the house, and with conspiracy with the others in the crimes, was overwhelming. The testimony of the admitted drug dealer Asmar Gary that Barksdale was his cocaine supplier, Gary would buy from either brother depending who had it, he had seen [Appellant] buy cocaine in large quantity and cook it into crack in a pot found in the house, had seen him display and move the firearms, which he claimed were his, and was there the day of the arrests to arrange to buy two ounces of coke from [Appellant] was alone sufficient to convict [Appellant] in the cocaine conspiracy beyond a reasonable doubt. In light of Gary's testimony, especially damning were the letters, one addressed to [Appellant], describing methods for preparing cocaine and crack for distribution, found in his house in a room to which he had free access in close proximity to his driver's license, car registration, and photographs of him. This evidence, together with all the other evidence presented by the Commonwealth, provided the jury with a strong inference [Appellant] was a leader of the cocaine conspiracy and guilty of the crimes [with] which he was charged. By contrast, [Appellant's] evidence was weak and inherently incredible. A sister described a job to which she drove him, but could not explain convincingly why he needed a ride when he had his own car, and no records of employment were produced. A brother and coconspirator, Barksdale, claimed all the other conspirators were involved in the conspiracy but his brother was not, and explained his plea to conspiracy with his brother as being prompted by his attorney's urging him to lie. Of course, his attorney contradicted this preposterous claim. The mild references to prison in the taped telephone call-if that is how the jury perceived them- could in the entire context of the case have had no influence on the jury's verdict finding [Appellant] guilty of the crimes charged. The jury had already heard testimony that [Appellant], Gary and Thomas were arrested on the day his house was searched. It was apparent from the context of their testimony that Barksdale and Gary were both incarcerated. The jury could simply have presumed [Appellant] was as well, and paid no mind to the brief, passing, equivocal prison references in the taped telephone call, upon which the Commonwealth's witness interpreting language in the call was not asked to and did not comment. Admission of the tape was harmless to the defense's case.

Memorandum, filed 1/5/15, at 28-29 (citing Trial Court Opinion, dated 8/10/11, at 34-40).

Accordingly, we conclude Appellant's claim that trial counsel had been ineffective for failing to raise a motion in limine or otherwise properly challenge the Commonwealth's playing of the telephone conversation for the jury without first redacting Appellant's vague reference fails for lack of prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/13/2016